UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEON DAVIS,

        Plaintiff,

v.                         CASE No. 8:12-CV-1130-T-35TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of
Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION

       The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was forty-eight years old at the time of the administrative hearing and who has a high school education, has worked as a warehouse worker, forklift truck operator, and a cleaner (Tr. 29, 50-51). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to back problems (Tr. 154). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe combination of impairments consisting of "degenerative disc disease; history of disc protrusion at L5-S1; disc bulging at L4-5; scoliosis; cervical spine osteophytes at multiple levels; an affective disorder variously diagnosed as dysthymic disorder, adjustment disorder, bipolar disorder, and depressive disorder (20 CFR 404.1520(c) and 416.920(c))" (Tr. 13). He concluded that these impairments restricted the plaintiff to a limited range of sedentary work as follows (Tr. 15):

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR

> 404.1567(a) and 416.967(a) except he requires a sit or stand option. The claimant remains able to only occasionally perform postural activities, except he can never climb. The claimant must avoid exposure to hazards. The claimant remains able to perform only unskilled, routine, repetitive, and entry-level work.

The law judge decided that these limitations prevented the plaintiff from returning to his past relevant work (Tr. 19). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as food and beverage order clerk and sorter (Tr. 20-21). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 21). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3),

1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled

before his insured status expired on December 31, 2009, in order to receive

disability benefits (Tr. 11). 42 U.S.C. 423(c)(1); Demandre v. Califano, 591

F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a

similar requirement with respect to the plaintiff's claim for supplemental

security income payments.

     A determination by the Commissioner that a claimant is not

disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402

U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938). Under the substantial evidence test, "findings of fact made

by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v.

Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff injured his back in workplace accidents in 2003 and

2006 (Tr. 609). He alleges disability since August 8, 2007. The law judge

found that the plaintiff had back impairments and an affective disorder that

substantially limited the plaintiff to a restricted range of sedentary work (Tr.

13, 15).

A. The plaintiff argues first that the "Hypothet [sic] Utilized as

Basis for Decision is Incomplete" (Doc. 18, p. 2) because it did not adequately

account for the plaintiff's moderate limitation in concentration, and failed to

include limitations for reaching and foot controls (id.). The plaintiff has not

shown that the hypothetical question upon which the law judge based his

decision is deficient.

"In order for a vocational expert's testimony to constitute

substantial evidence, the ALJ must pose a hypothetical question which

comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d

1219, 1227 (11ᵗʰ Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11ᵗʰ Cir. 2004). In other words, the operative hypothetical question must contain the individual's vocational profile, including particularly his residual functional capacity, as determined by the law judge.

The law judge's finding of the plaintiff's residual capacity matches the hypothetical question asked of the vocational expert (<u>compare</u> Tr. 15 <u>with</u> Tr. 51). Importantly, the plaintiff does not raise as a distinct issue a challenge to the law judge's residual functional capacity finding. The scheduling Order requires the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 7, p. 2). Consequently, since the plaintiff did not specifically articulate a challenge to the residual functional capacity finding, any such challenge is deemed forfeited. This issue is therefore limited to the adequacy of the hypothetical question.

The plaintiff argues that the operative hypothetical question did not account for the law judge's finding that the plaintiff has a moderate limitation in concentration (Doc. 18, p. 2). The law judge "g[ave the plaintiff] the benefit of the doubt" in making that finding, and determined that the limitation was accommodated by restricting the plaintiff to "only unskilled, routine, repetitive, entry-level work" (Tr. 19).

The plaintiff, citing to <u>Winschel</u> v. <u>Commissioner of Social Security</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2001), argues that, as a matter of law, a limitation to routine repetitive tasks does not adequately account for a moderate limitation in concentration (Doc. 18, p. 2). However, <u>Winschel</u> does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace. 631 F.3d at 1181.

This reading of <u>Winschel</u> is confirmed by my examination of the district court record in that case. The error in <u>Winschel</u> was that, although the law judge found that the plaintiff had a moderate limitation in concentration, persistence, or pace, the hypothetical question to the vocational expert

contained no restriction regarding that limitation.  See Case No. 6:08-CV-1750-DAB (Doc. 14, p. 12).  Rather, the only limitation was to "a range of sedentary and or light work with a sit/stand option" (id.).  Thus, the Court of Appeals had no occasion to determine whether a restriction to simple routine work was adequate if there was a moderate limitation in concentration, persistence, or pace.  All the Court decided was that, if there was such a limitation, a hypothetical question that contained no mental restriction at all was inadequate.

Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks.  See, e.g., Hurst v. Commissioner of Social Security, 2013 WL 2663092 (11th Cir.)(unpub. dec.) (simple, routine repetitive tasks); Dawson v. Commissioner of Social Security, 2013 WL 4711468 (11th Cir.)(unpub. dec.) (routine, repetitive tasks with up to three-step instructions); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874 (11th Cir. 2012) (the performance of simple, routine and repetitive tasks adequately

accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); Scott v. Commissioner of Social Security, 495 Fed. Appx. 27 (11th Cir. 2012) (simple, routine tasks or unskilled work accounted for moderate limitations in concentration, persistence, or pace); Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (the plaintiff could perform simple tasks). And there are a number of other Eleventh Circuit cases with the same ruling.

In this case, there is ample record evidence supporting the law judge's finding that "unskilled, routine, repetitive, entry-level work" accommodated the plaintiff's moderate concentration deficit (Tr. 15). Thus, among other findings, the law judge noted that consultative examiner Dr. Robert G. Moering's mental status examination of the plaintiff was essentially normal, and the plaintiff's treating psychiatrist stated the plaintiff was doing well psychiatrically with prescribed mediation (Tr. 18, 373, 570). Notably, Dr. Moering assessed the plaintiff with a Global Assessment of Functioning (GAF) score of 63 (Tr. 374), which indicates only "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal

relationships."[3]   The law judge, furthermore, noted that a nonexamining reviewing psychologist opined that the plaintiff's mental impairment was not even severe (Tr. 18, 384).   The plaintiff, significantly, fails to identify any evidence which supports, much less compels the law judge to find, greater mental functional limitations.   See   Adefemi v. Ashcroft.   Therefore, the plaintiff failed to show that the operative hypothetical question was flawed.

The plaintiff argues further under this heading that the law judge should have found him disabled based on the vocational expert's testimony that the plaintiff is unemployable if his pain in his neck and back impact his concentration one-third to two-thirds of the day (Doc. 18, p. 2; see Tr. 52-53). This contention is meritless because it is based on the unsubstantiated assertion that a moderate limitation of concentration would mean that the plaintiff would have a limitation in concentration from one-third to two-thirds of a day (Doc. 18, p. 2).   However, the law judge did not make such a finding. Rather, the law judge determined that the moderate limitation in concentration, persistence, or pace was accommodated by a restriction to unskilled, routine,

---

[3] The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.

repetitive, and entry-level work (Tr. 19).  As indicated, the Eleventh Circuit has frequently found such a restriction appropriate.  Accordingly, the law judge could properly disregard the vocational expert's testimony that a limitation in concentration of one-third to two-thirds a day would rule out any work.

The plaintiff also contends that the absence of limitations on reaching and foot controls from the operative hypothetical question was error (Doc. 18, p. 2).  This claim is meritless because the law judge did not include such limitations in the residual functional capacity (Tr. 15).  See Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161.  As previously explained, the plaintiff did not specifically challenge the law judge's residual functional capacity finding and, therefore, any such challenge is forfeited. Because there are no limitations on reaching or foot controls in the residual functional capacity finding, they are not required in the hypothetical question.

Furthermore, even if the plaintiff had not forfeited a challenge to the residual functional capacity determination, the plaintiff makes no cogent argument that the law judge was compelled to find limitations on reaching and foot controls in that determination.  See Adefemi v. Ashcroft, supra.  Thus, the

-12-

plaintiff merely states that Dr. James D. Melton, Jr.'s opinion includes limitations on reaching and foot controls (Doc. 18, p. 2), but the law judge did not give that opinion controlling weight (Tr. 17-18). Rather, the law judge simply gave Dr. Melton's opinion significant weight (Tr. 18).

Moreover, he clearly, but implicitly, discounted Dr. Melton's opinions regarding reaching and foot controls. Thus, the law judge expressly acknowledged Dr. Melton's opinions on those matters (Tr. 17). However, he did not include them in his residual functional capacity finding. Those circumstances show that the law judge considered Dr. Melton's opinions on reaching and foot controls and rejected them. Therefore, the plaintiff cannot demonstrate that the residual functional capacity finding, and thereby the hypothetical question, should have included limitations on reaching and foot controls merely by referring to Dr. Melton's opinion.

As indicated, however, that is all that the plaintiff did. He made no attempt to show that evidence in the medical record compelled a finding that the plaintiff had such limitations. Significantly, the scheduling Order not only required the plaintiff to identify his challenges with particularity, but also

to support such challenges "by citations to the record of the pertinent facts" (Doc. 7, p. 2). The plaintiff on this point did not satisfy that requirement.

The Commissioner, by contrast, did show that the absence of a reaching limitation is supported by substantial evidence. Thus, she points out the law judge expressly addressed, and rejected, problems with the plaintiff's fingers and hands (Tr. 14). With respect to reaching, the Commissioner refers to evidence which is inconsistent with reaching limitations, stating (Doc. 19, p. 7):

> The ALJ considered Dr. Naomi Abel's statement ruling out any cervical radiculopathy (Tr. 14, 528, 544), x-rays of Plaintiff's cervical spine showing only mild osteophytes and a slight subluxation (Tr. 17, 615), an MRI showing no significant cervical canal stenosis or neuroforaminal narrowing (Tr. 17, 534-35), electromyography and nerve conduction velocity studies ruling out any carpal tunnel syndrome, neuropathy, myelopathy, or radiculopathy (Tr. 17, 528, 544), and Plaintiff's ability in May 2008 to pick up a child from the floor (Tr. 19, 151).

Moreover, as the Commissioner notes (Doc. 19, p. 6), the plaintiff's limitation to sedentary work eliminates tasks involving leg-foot controls. See SSR 83-

10, 1983 WL 31251 at *5 (S.S.A.) (leg-foot controls ... require greater exertion than in sedentary work).

For these reasons, the challenge to the hypothetical question based on a lack of limitations regarding reaching and foot controls is unavailing.

B. The plaintiff asserts under the next heading that the law judge failed to evaluate his objections to the opinion of orthopedic surgeon Dr. Melton, who conducted a consultative physical examination of the plaintiff following the administrative hearing (Doc. 18, p. 5; see Tr. 17, 600-13). This contention is ironic since the plaintiff on the preceding issue complained that the law judge failed to accept Dr. Melton's opinions on reaching and foot controls.

Dr. Melton assessed the plaintiff with lumbago; lumbar/lumbosac disc degeneration; cervicalgia; sprain lumbar region; and pain in joint, pelvis/thigh (Tr. 613). He opined, among other things, that the plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds; sit, stand and walk six hours in a day, with a change in position after two hours of sitting or standing and after one hour of walking; and occasionally engage in

postural movements (see Tr. 603-08).  Dr. Melton also cautioned that the plaintiff's affect and complaints were exaggerated (Tr. 610, 613).

The law judge forwarded a copy of Dr. Melton's report to plaintiff's counsel and solicited the plaintiff's comments on the report (see Tr. 620; Doc. 18, p. 3).  In correspondence dated November 12, 2010, plaintiff's counsel stated his objections to Dr. Melton's report (Tr. 620-25).  The law judge, apparently unpersuaded by the plaintiff's objections, gave Dr. Melton's opinion significant (but not controlling) weight (Tr. 18).

The plaintiff argues that the law judge's decision must be reversed because it did not contain any discussion of the plaintiff's objections to Dr. Melton's opinion.  The plaintiff has failed to include any legal authority in support of this argument, in violation of the scheduling Order which directs that "any ... discrete challenges must be supported by ... citations of the governing legal standards" (Doc. 7, p. 2).  Therefore, this argument is properly deemed forfeited (see id.).

Furthermore, the contention is meritless.  Thus, there is no requirement that the law judge specifically refer to every piece of evidence in his decision, Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), much

-16-

less recount the plaintiff's objections in his decision.  See Catalado v. Astrue, 2010 WL 545994 at *6 (M.D. Fla.) (the law judge "is not required to reference counsel's letter in his opinion").

Moreover, none of the plaintiff's objections to Dr. Melton's opinion is meritorious.  The plaintiff asserts that Dr. Melton's opinion was entitled to less weight because Dr. Melton was unaware of Dr. George S. Sidhom's opinion that the plaintiff could work only part-time (Doc. 18, p. 4). However, Dr. Sidhom's opinion is irrelevant to Dr. Melton's assessment of the plaintiff's physical condition and functional limitations, which Dr. Melton properly based upon his comprehensive medical examination of the plaintiff and objective testing.

The plaintiff also argues that Dr. Melton was not privy to Dr. Sidhom's records noting the plaintiff's carpel tunnel surgery, and Dr. Sidhom's diagnosis of "possible" right cubital tunnel syndrome (id., p. 5), which is a dysfunction of the ulnar nerve at the elbow that can cause pain in the elbow, hand and fingers. See www.assh.org/Public/HandConditions/Pages/CubitalTunnel Syndrome.aspx.  However, Dr. Melton was aware of the plaintiff's carpal tunnel surgery, which occurred prior to the insured period

-17-

(see Tr. 609).   Furthermore, Dr. Sidhom's assessment of "possible" right cubital tunnel syndrome was refuted by subsequent electromyography and nerve conduction velocity studies which showed, among other things, no ulnar neuropathy (Tr. 539).   Moreover, Dr. Edwin Lamm's finding of good grip strength (Tr. 369), and Dr. Melton's findings that the plaintiff's sensation to touch and pressure were intact and that the plaintiff had a normal range of motion in the elbow, wrist, and fingers (Tr. 600-01), also undermine the plaintiff's contention that he suffered from a lack of bilateral dexterity due to "possible" right cubital tunnel syndrome.

The plaintiff contends further that "left out of Dr. Melton's report are all of the radiology reports" (Doc. 18, p. 4).  This assertion is baseless.  As reflected in Dr. Melton's report, he considered several radiology studies, and he noted that they showed degenerative changes in the plaintiff's spine  (Tr. 613-17).[4]

---

[4]The plaintiff argues that Dr. Melton also did not have for his review the records of Dr. Bharminder S. Bedi, the plaintiff's treating psychiatrist, and Dr. Dana Perrin, the treating general practitioner (Doc. 18, p. 4).  The plaintiff does not develop any argument that those records were necessary for Dr. Melton to give a probative opinion of the plaintiff's condition (see Doc. 7). Such a contention is particularly anomalous with regard to psychiatrist Dr. Bedi, as Dr. Melton did not opine on the plaintiff's mental functioning.

The plaintiff argues, in particular, that Dr. Melton did not review the results of his 2010 magnetic resonance imaging (MRIs), which he alleges provides "strong objective evidence to substantiate the [plaintiff's] complaints of pain" (Doc. 18, pp. 4-5). Although it does not appear that Dr. Melton reviewed the 2010 MRI results, the law judge did, and the law judge found that Dr. Melton's opinion is "consistent with the objective evidence of the record (*i.e.*, x-rays and MRIs obtained since the alleged onset date)" (Tr. 18).

The plaintiff's citations to MRI findings of "severe osteoarthritic changes ... at L5 S1," narrowing of the cervical canal, cervical canal stenosis, and neural-forminal narrowing (Doc. 18, pp. 4-5) do not undermine the law judge's finding because "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment" on the person's ability to work. Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).[5] Here, the plaintiff has failed to show that those impairments are of such a severity

---

[5]The plaintiff also states, without a record citation, that he has a herniated disc (Doc. 18, p. 4). However, a herniated disc is not identified in the MRI findings (Tr. 536).

that they would cause disabling pain and impose function limitations greater than those found by the law judge.

To the contrary, neurologist Dr. Abel opined the MRIs showed "[t]here is no significant cervical canal stenosis or neuroforminal narrowing," "there is no significant [lumbar] canal stenosis," and the bilateral neuroforaminal narrowing at L5-S1 is "mild" (Tr. 544). Significantly, Dr. Abel did not assess the plaintiff with any resulting functional limitations, and merely recommended "pain management/conservative treatment" (Tr. 543-44). Moreover, Dr. Melton's physical examination of the plaintiff did not reveal objective findings consistent with debilitating pain. Thus, Dr. Melton observed, among other normal findings, that the plaintiff had a muscular body habitus, an intact gait, normal station and posture, and normal strength in his neck, upper extremities, and lower extremities (Tr. 610-12). In sum, the plaintiff has not shown that the 2010 MRIs reflected disabling impairments that undermined the probative value of Dr. Melton's opinion.

The plaintiff's final contention under this heading is that the law judge erroneously "attempt[ed] to equate Dr. Lamm's report ... with that of Dr. Melton" (Doc. 18, p. 5). That argument is baseless. Rather, all the law judge

-20-

said in this regard was that he gave more weight to the opinions of Dr. Melton and Dr. Lamm because both examined the plaintiff and their findings were "consistent with" (Tr. 18) the objective medical evidence. In sum, none of the plaintiff's several arguments under this heading shows error, much less reversible error.

      C. The plaintiff contends under the next heading that the law judge erred because he "does not find any impairment severe in and of itself" (Doc. 18, p. 6). The law judge found that the plaintiff had a severe combination of impairments consisting of "degenerative disc disease; history of disc protrusion at L5-S1; disc bulging at L4-5; scoliosis; cervical spine osteophytes at multiple levels; an affective disorder variously diagnosed as dysthymic disorder, adjustment disorder, bipolar disorder, and depressive disorder (20 CFR 404.1520(c) and 416.920(c))" (Tr. 13). This finding is in accord with the regulations which direct the law judge to determine whether the plaintiff has an impairment that is "severe" or a combination of impairments that is "severe" (Tr. 12). 20 C.F.R. 404.1520(c) and 416.920(c).

Specifically, the plaintiff argues that the law judge did not find that his spinal impairments were severe (Doc. 18, p. 6). However, it is clear from the law judge's determination of the plaintiff's residual functional capacity that he found the plaintiff's spinal impairments were severe because he limited the plaintiff to a restricted range of sedentary work due to those impairments (Tr. 13, 15). See Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (a severe impairment interferes with the individual's ability to work). Notably, the plaintiff does not specify in this argument any additional functional limitations due to these back impairments that the law judge should have found, but did not (Doc. 18, p. 6). Therefore, this argument is baseless.

The plaintiff also argues that the law judge failed to assess as a severe impairment "possible right cubital tunnel syndrome" (id., pp. 6-7). Dr. Sidhom assessed the plaintiff with "possible" right cubital tunnel syndrome based on electrical conductive studies in 2009 (id., p. 7).

However, as indicated supra, subsequent electromyography and nerve conduction velocity studies refute that speculative diagnosis. Thus, the 2010 studies demonstrated "no ... evidence of right or left carpal tunnel syndrome, or ulnar neuropathy. No evidence of peripheral neuropathy. No

-22-

evidence of left brachial plexopathy, or left cervical radiculopathy" (Tr. 539). The law judge noted those studies twice in his decision (Tr. 14, 17). Furthermore, the law judge acknowledged the plaintiff's allegations of problems with his fingers and hands (Tr. 14), but found no severe impairment based on the normal electromyography and nerve conduction velocity study, Dr. Lamm's finding of good grip strength, and the plaintiff's reported ability to pick up from the floor his 30-pound child (Tr. 14, 19; see Tr. 151). The plaintiff has not cited to any definitive diagnosis of right cubital tunnel syndrome, and certainly has not cited any evidence compelling a finding that it had more than a minimal effect on his ability to work. See Adefemi v. Ashcroft, supra. Therefore, the plaintiff's contention that the law judge erred by not identifying "possible" right cubital tunnel syndrome as a severe impairment is meritless.

D. The plaintiff broadly contends under the next heading that the law judge "[f]ail[ed] to give proper weight to opinions of treating doctors, consultants, and state agency physicians" (Doc. 18, p. 8). This argument focuses on the reduced weight given to the opinion of the defendant's treating pain physician, Dr. Sidhom (id., pp. 8-9).

In this regard, the plaintiff cites to a "Work Status Certificate" dated May 4, 2010, in which Dr. Sidhom recommended that the plaintiff work "[p]art time no more than 4 hrs in 24 hr period. Light duty. ... No lifting more than 15 lbs. No repetitive bending. No crawling, squatting, climbing ladders or stooping" (id., p. 8; Tr. 546-47). Dr. Sidhom did not opine in the certificate the duration of these restrictions (id.).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge acknowledged that Dr. Sidhom was a treating physician, and noted Dr. Sidhom's varying opinions of the plaintiff's functional capabilities, including Dr. Sidhom's May 2010 opinion that the plaintiff was restricted to part-time light duty work that would render the plaintiff disabled (Tr. 16, 17). See SSR 96-8p, 1996 WL 374184 (S.S.A.)

(substantial gainful activity is defined as working 8 hours a day, 5 days a

week, or an equivalent work schedule).  In this regard, the law judge stated

(Tr. 18) (emphasis in original):

> The undersigned considered the various opinions offered by Dr. Sidhom, but they are given only some weight.  As discussed above, Dr. Sidhom indicated in November 2008 that the claimant was *not* totally disabled and his inability to *find* work was probably related to his underlying medical conditions and associated work restrictions.  This opinion is not inconsistent with the claimant's determined residual functional capacity.  Dr. Sidhom's statement in March 2010 that the claimant should be excused from working for the next 2 months is not given any weight since his progress notes indicate no deterioration or even change in the claimant's condition at that time.  Moreover, Dr. Sidhom provided no explanation as to why a period of 2 months was chosen. ... When Dr. Sidhom's opinion changed again in May 2010 to the claimant being able to work only part-time at light duty, his progress notes again reflect no deterioration or significant change in the claimant's condition that would support any change in his limitations.  Additionally, the imaging of the claimant's cervical and lumbar spine done at USF Health, and the examination findings of Drs. Lamm and Melton, refute the conclusion the claimant is unable to do work activity on a full-time basis.

This explanation provides good cause for discounting the opinion of Dr.

Sidhom.  Lewis v. Callahan, supra, 125 F.3d at 1440.

The plaintiff argues that Dr. Sidhom's opinion should have been accepted because it was "based upon MRI evidence in 2004 and 2007 and electrical studies .... along with his clinical findings and treatment with the usage of injections over a long period of years" (Doc. 18, p. 9). The plaintiff's conclusory argument does not include any specific findings from those tests or physical examinations that establish disabling impairments (see id.). Therefore, this contention is properly deemed forfeited pursuant to the scheduling Order (see Doc. 7, p. 2).

Regardless, the law judge noted in the decision that the 2004 and 2007 MRIs "confirmed only a lumbar disc protrusion, lumbar disc bulge, mild scoliotic curvature, and mild degenerative changes (Exhibits B1F, B2F, B11F, B14F)" (Tr. 16; see Tr. 406, 466). Therefore, the law judge reasonably concluded that those results did not support Dr. Sidhom's opinion of disabling limitations.

The plaintiff argues further that the law judge could not arbitrarily reject Dr. Sidhom's opinion in favor of those given by University of South Florida (USF) physicians because the USF doctors were not treating sources nor did they specialize in pain management (Doc. 18, p. 9). In this

connection, the only diagnoses mentioned by the plaintiff are carpal tunnel syndrome and possible right cubital syndrome (id.). Dr. Abel conducted diagnostic testing which "demonstrated no findings of right or left carpal tunnel syndrome, or ulnar neuropathy" (Tr. 540). Dr. Abel was clearly qualified to conduct and interpret such tests, as she is a neurologist. Furthermore, the law judge reasonably accepted Dr. Abel's definitive diagnosis over Dr. Sidhom's "possible" diagnosis. Therefore, this argument is meritless.

The plaintiff argues that the opinions of one-time consultative examining physicians should not be given greater weight than those of treating physicians, apparently referring to Dr. Melton (Doc. 18, p. 9). However, where, as here, the law judge has shown good cause for discounting the opinion of a treating physician, the law judge may give greater weight to the opinion of an examining physician. See, e.g., Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012); Peterson v. Astrue, 232 Fed. Appx. 866, 871 (11th Cir. 2007); Davis v. Barnhart, 186 Fed. Appx. 965, 967 (11th Cir. 2006).

Notably, the law judge did not entirely adopt Dr. Melton's opinion. Thus, Dr. Melton opined that the plaintiff could perform light work, while the law judge found that the plaintiff was restricted to sedentary work with a sit/stand option. The law judge, in fact, did not adopt the opinion of any doctor. Rather, in accordance with his assigned responsibility of administrative fact-finder, he evaluated the various medical opinions, and made his own determination of the plaintiff's residual functional capacity. "The weighing of evidence is a function of the factfinder, not of the district court." Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986).

Next, the plaintiff contends that the opinions of the reviewing nonexamining physicians "do not provide good cause for giving less than substantial weight to the opinion of Dr. Sidhom" (Doc. 18, p. 9). As the foregoing quote shows, supra, p. 25, the law judge did not discount Dr. Sidhom's opinion on this basis (see Tr. 18).

The plaintiff also argues in this respect that the "opinions of non-examining physicians are to be given little weight ... as a matter of law" (Doc. 18, p. 10). Although such opinions are generally afforded less weight, the reports of nonexamining reviewing physicians may be credited over the

-28-

opinion of the treating physician when good cause is stated for discounting the treating physician's opinion. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Sec., 503 Fed. Appx. 892, 893 (11th Cir. 2013) (law judge stated good cause to afford more weight to the opinion of a nonexamining physician than to the opinion of the treating physician). As discussed above, the law judge stated good cause for giving only some weight to Dr. Sidhom's opinion (Tr. 18) and, therefore, the principle cited by the plaintiff is inapposite.

The plaintiff also argues that the law judge failed to state the weight he gave to the opinion of Dr. Dana Perrin, a treating general practitioner (Doc. 18, p. 10). This contention is baseless. Dr. Perrin completed a Florida Department of Revenue Child Support Enforcement form opining that the plaintiff would be unable to work for two months (Tr. 17). The law judge stated that "Dr. Perrin's opinion ... is not given any weight since there is no explanation as to why the claimant would be unable to work for a period of 2 months" (Tr. 18). The plaintiff does not identify any other opinion given by Dr. Perrin that was not evaluated (Doc. 18, p. 10).

Moreover, the plaintiff does not challenge the law judge's reason for discounting Dr. Perrin's opinion.

The plaintiff contends further that the law judge did not state the weight accorded to the opinion of Dr. Bharminder S. Bedi, the plaintiff's treating psychiatrist (id.). In the first place, the plaintiff does not specify any opinion of Dr. Bedi that was not addressed by the law judge (id.). Moreover, it is obvious from the decision that the law judge gave Dr. Bedi's opinions, which were not favorable to the plaintiff, significant weight. Thus, in finding that the plaintiff had only mild difficulties in social functioning, the law judge noted that Dr. Bedi made no mention of any significant social functioning limitations (Tr. 14). Furthermore, in rejecting the plaintiff's contention that he had disabling mental limitations, the law judge referred to Dr. Bedi's opinion that the plaintiff was doing well psychiatrically with medication, and also noted that Dr. Bedi had apparently rejected the plaintiff's request for a note that he could not work (Tr. 18-19).

In all events, the law judge's finding that the plaintiff had a severe mental impairment of "an affective disorder variously diagnosed as dysthymic disorder, adjustment disorder, bipolar disorder and depressive

disorder" (Tr. 13) is consistent with, if not more favorable to the plaintiff than, Dr. Bedi's opinion. In a progress note of August 27, 2010, Dr. Bedi stated that "[h]is moods are stable so there is nothing else that I can do for him," adding that "[h]is bipolar type II disorder is under control" (Tr. 569). Therefore, this contention is similarly meritless.

The plaintiff's next argument is that the law judge erred because he did not find that the plaintiff was unable to stoop (Doc. 18, pp. 10-11). The law judge limited the plaintiff to occasional stooping (see Tr. 15). The plaintiff does not cite to any record evidence that he cannot stoop.

Rather, the plaintiff makes the frivolous argument that, because Dr. Lamm "determined [the plaintiff] should not be standing [that] means [the plaintiff] cannot stoop" (Doc. 18, p. 10). Dr. Lamm did not opine that the plaintiff could never stand. Rather, he simply indicated that the plaintiff could not stand long enough to return to his prior job washing cars (Tr. 370). Moreover, the plaintiff testified he can stand comfortably for twenty minutes at a time (Tr. 44-45). Since, contrary to the plaintiff's misstatement of Dr. Lamm's opinion, the plaintiff can stand, there is no basis for the contention that the plaintiff cannot occasionally stoop, as the law judge found.

The plaintiff's final argument is titled "Failure to Properly Utilize 11th Circuit Pain Standard" (Doc. 18, p. 11). The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, supra, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge recognized the need to articulate a credibility determination (Tr. 15). He referred to the pertinent regulation, Social Security Rulings governing such determinations, and even cited Landry v. Heckler,

supra (id.). This demonstrates that he appropriately applied the Eleventh Circuit pain standard. Wilson v. Barnhart, supra, 284 F.3d at 1225-26.

Furthermore, the law judge acknowledged the plaintiff's testimony that he cannot work due to back and neck injuries, and that he experiences pain, numbness, muscle spasms, medication side effects, decreased energy, fatigue, anxiety attacks, and depressed mood (Tr. 19). The law judge found that, although "[t]he evidence does establish the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged" (Tr. 15), "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 19).

Significantly, the law judge did not reject all of the plaintiff's subjective complaints. To the contrary, the law judge credited the plaintiff's testimony to a great extent since he found the plaintiff was limited to performing only a restricted range of sedentary work (Tr. 15).

The law judge also set forth cogent reasons for discounting the plaintiff's credibility. Thus, the law judge explained that "[t]he objective

evidence does not confirm the severity of the alleged pain, nor does the weight of the medical and non-medical evidence demonstrate the presence of an impairment that reasonably could be expected to produce pain and functional limitation to the degree alleged by the claimant" (id.). The law judge then elaborated (Tr. 19) (emphasis in original):

> The claimant's allegations concerning the limiting effects of his symptoms are found to be not fully credible due to inconsistencies in some of his statements and his demonstrated ability to perform certain activities. For example, the claimant's allegation of a complete inability to work is inconsistent with his statement to Dr. Bedi in August 2010 that he may be able to do some kind of work once he *finds* a job (Exhibit B21F). The claimant also reported to consultative examiner Dr. Moering that he earns spending money by cleaning for family members (Exhibit B7F). Also, the undersigned finds the claimant's allegations of him experiencing significant medication side effects to be not fully credible since Dr. Sidhom's progress notes frequently document that there was *no* evidence of medication induced side effects (e.g., Exhibits B3F, B12F). The undersigned also notes the report from a field office employee that the claimant was seen picking up his child from the floor as he was leaving in May 2008 (Exhibit B1E). Lastly, the undersigned notes the claimant's reports of frequent anxiety attacks, sometimes lasting all day at Exhibit B8E. None of the claimant's treating sources documented him as reporting anxiety

attacks of this nature and frequency. It is reasonable to conclude if an individual were experiencing anxiety attacks this severe on such a frequent basis, it would be noted somewhere within that individual's records.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record, the opinions of the DDS consultants who reviewed this case, some of the opinions of the claimant's treating sources, and some of the claimant's own statements concerning his ability to work once he secures a job.

The law judge's explanation is reasonable, supported by substantial evidence, and adequate to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698-99 (11th Cir. 2006).

The plaintiff argues the law judge's credibility determination was deficient because the law judge did not mention the plaintiff's 2010 MRI finding of severe osteoarthritis (Doc. 18, p. 11). The decision reflects that the law judge considered the results of that MRI, as well as several other radiology tests, in making his credibility determination (see Tr. 17). As pertinent here, the law judge specified that there was an "arthritic change at

L5-S1" (id.), which is consistent with the MRI finding of "severe osteoarthritic ... changes ... mostly at L5-S1" (Tr. 536). In all events, there is no requirement that the law judge specifically refer to every piece of evidence in his decision. Dyer v. Barnhart, supra, 395 F.3d at 1211. Moreover, the plaintiff has not referred to any medical evidence indicating that osteoarthritis rendered him more limited than the residual functional capacity found by the law judge. Therefore, the 2010 MRI finding does not undermine the law judge's credibility determination.

The plaintiff contends further that the law judge erroneously found that the plaintiff's testimony of medication side effects was inconsistent with his medical records (Doc. 18, p. 12). The plaintiff does not dispute that his medical records do not mention side effects, but rather argues that the absence of such side effects does not mean that he was not experiencing side effects at the time of the hearing (id.). This argument is unavailing. The law judge could reasonably reject the credibility of the plaintiff's allegations of side effects caused by long-term medications on the ground that the plaintiff had not reported any such not effects to his physicians. See Smith v. Social Security Commissioner, 272 Fed. Appx. 789, 800 (11th Cir. 2008) (affirming

-36-

the law judge's finding that the plaintiff's testimony of disabling medication side effects were not credible because her medical records did not contain any reports of such side effects); Turner v. Commissioner of Social Security, 182 Fed. Appx. 946, 949 (11th Cir. 2006) (the law judge did not err in discrediting testimony regarding medication side effects because "the record includes no evidence that [the plaintiff] consistently complained to her doctors of any side-effects"); see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (the law judge could reasonably determine that medication side effects did not present a significant problem because, among other things, she did not complain of side effects to her physicians).

Lastly, the plaintiff contends that the law judge failed to consider Dr. Sidhom's opinion in making his credibility determination (Doc. 18, pp. 11, 12). As discussed above, the law judge stated good cause for affording only some weight to Dr. Sidhom's opinion. In particular, the law judge could reasonably reject Dr. Sidhom's assessment of "possible" right cubital tunnel syndrome based on electromyography and nerve conduction velocity studies which showed no ulnar neuropathy (Tr. 539).

In short, the law judge's credibility determination is more than adequately explained and is supported by substantial evidence. The plaintiff certainly has not shown that the evidence compels a contrary conclusion. <u>See</u> <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.

## IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER ⟋⟁, 2013

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).