UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEON DAVIS,

    Plaintiff,

v.                                            Case No: 8:12-cv-1130-T-35TGW

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Plaintiff's Complaint, seeking review of the denial of his claims for Social Security Disability benefits and Supplemental Security Income benefits. (Dkt. 1) On November 11, 2013, United States Magistrate Judge Thomas G. Wilson issued a Report and Recommendation. Judge Wilson found that the decision of the Commissioner of Social Security is supported by substantial evidence and contained no reversible error. (Dkt. 20) Based on his findings, Judge Wilson recommends that the Commissioner's final decision be affirmed. On November 26, 2013, Plaintiff filed an objection to the Report and Recommendation. (Dkt. 21)

**I.    STANDARD OF REVIEW**

In the Eleventh Circuit, a district judge may accept, reject or modify the magistrate judge's report and recommendation after conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); see Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge

"shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir.1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo* and the court may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C); see Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

## II.  DISCUSSION

Plaintiff has raised five objections to Judge Wilson's Report and Recommendation ("R&R"). (Dkt. 21) Plaintiff's first objection is that the Administrative Law Judge ("ALJ") asked the vocational expert an incomplete hypothetical question that did not include Plaintiff's moderate limitation in concentration and Plaintiff's limitations on reaching and foot controls. Plaintiff's second objection is that the ALJ failed to evaluate Plaintiff's objections to the opinion of orthopedic surgeon, Dr. James Melton ("Dr. Melton"). Plaintiff's third objection is that the ALJ failed to recognize all of Plaintiff's impairments but "lump[ed] together all of [Plaintiff's] impairments." Plaintiff's fourth objection is that the ALJ failed to give proper weight to the opinions of treating doctors, consultants, and state agency physicians. Plaintiff's fifth objection is that the ALJ failed to properly utilize the Eleventh Circuit pain standard.

2

The Court addresses each of Plaintiff's objections below.

1. <u>Hypothetical Question</u>

Plaintiff contends that the hypothetical question that the ALJ asked the vocational expert was incomplete because the question did not include Plaintiff's moderate concentration impairment and Plaintiff's limitations for reaching and foot controls. The ALJ asked the vocational expert the following question:

> Please assume a younger individual with a high school education [inaudible] performing at best sedentary work with a sit-stand option, only occasional postural, no hazards or climbing, unskilled, defined as 'routine and repetitive,'. . . entry-level. With those limitations, can you name two jobs or one job consistent with the DOT?

(Dkt. 6-2 at P. 52)

In the R&R, Judge Wilson disagreed with Plaintiff's contention, concluding that the hypothetical question was complete. Judge Wilson found that Plaintiff's limitations were included in the hypothetical question, noting that the ALJ's residual functional capacity[1] ("RFC") matched the hypothetical question. Relying on Eleventh Circuit case law, Judge Wilson determined that the ALJ took Plaintiff's moderate concentration impairment into consideration when the ALJ limited Plaintiff to "unskilled, routine, repetitive, entry-level work." Judge Wilson also noted that Dr. Robert G. Moering's mental status examination[2] of Plaintiff supported the finding that "unskilled, routine, repetitive, entry-level work"

---

[1] Notably, Plaintiff did not challenge the residual functional capacity finding.
[2] Dr. Moering wrote the following in his report:
> He was cooperative and pleasant. His personal hygiene was good. Speech was normal and goal directed. His eye contact was adequate. He denied current suicidal or homicidal ideations, plans, or intent. His gait was normal. He denied current visual, auditory, and tactile hallucinations. He had no delusional constructs and denied paranoid, persecutory, and grandiose preoccupations. He denied ideas of reference, ideas of influence, and thought broadcasting/insertion. Mr. Davis's self- described mood was "down and out" and his affect was dysphoric. His insight and judgment appeared good. He was alert and oriented to all spheres. … Prognosis should be good with proper management of his symptoms.

(Dkt. 6-8 at P. 116)

3

accommodated Plaintiff's moderate concentration deficit.

As to Plaintiff's contention that the hypothetical question failed to include Plaintiff's limitations for reaching and foot controls, Judge Wilson found that the reaching and controls limitation was not required in the hypothetical question because it was not included in the RFC finding. Because Plaintiff did not challenge the RFC finding, Judge Wilson considered the challenge forfeited. Nonetheless, Judge Wilson noted that even if the challenge were not forfeited Plaintiff could not demonstrate that the RFC finding should have included limitations on reaching and foot controls by referring only to Dr. Melton's opinion. Therefore, absent a showing that the limitation should have been included in the residual functional capacity finding, Judge Wilson concluded that it was not necessary to be included in the hypothetical question. Further, Judge Wilson also found that the ALJ considered Dr. Melton's opinions in reaching and foot control yet rejected them.

For the testimony of a vocational expert to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Hurst v. Comm'r of Soc. Sec., 522 Fed. Appx. 522, 524-25 (11th Cir. 2013). The Eleventh Circuit has stated that where medical evidence demonstrated that a claimant could engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, a hypothetical including only unskilled work sufficiently accounted for the limitations. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.2011) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration,

4

persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

In Plaintiff's objection to Judge Wilson's report, he does not proffer any additional evidence or argument to demonstrate that the hypothetical question was flawed or inadequate. Judge Wilson resolved this argument in the R&R. Eleventh Circuit case law is clear that a hypothetical question limiting a claimant to unskilled work sufficiently accounts for the limitations in concentration, persistence, and pace. Kinnard v. Comm'r of Soc. Sec., 426 Fed. Appx. 835, 837 (11th Cir. 2011)("A 'hypothetical question[ ] adequately account[s] for a claimant's limitations . . . when the question[ ] otherwise implicitly account[s] for the [ ] limitations.'")(citing Winschel., 631 F.3d at 1180). Moreover, the hypothetical question need not include mention of purported limitations that the ALJ rejected, like Plaintiff's limitations for reaching and foot controls,. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004)("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."). Consequently, the Court finds the hypothetical question posed to the vocational expert to be adequate and supported by the evidence.

2. Evaluate Objections to Dr. Melton's Report

Next, Plaintiff contends that the ALJ failed to evaluate Plaintiff's objections to the report of Dr. Melton, who conducted a consultative physical examination of Plaintiff. In the ALJ's decision, the ALJ did not discuss Plaintiff's objections and gave Dr. Melton's opinion significant weight. On review of this contention, Judge Wilson opined that Plaintiff forfeited this argument because he failed to cite legal authority in support of his argument. Nevertheless, Judge Wilson evaluated Plaintiff's objections and found the

5

objections to be baseless and found no reversible error by the ALJ. (Dkt. 20 at P. 17 – 21)

Judge Wilson's evaluation of Plaintiff's objections and arguments adequately resolves Plaintiff's present contention that the ALJ did not evaluate his objections to the report of Dr. Melton. As noted by Judge Wilson, the ALJ's failure to discuss the objections is not a fatal flaw warranting reversal because the ALJ is not required to refer specifically to every piece of evidence in his decision, and the objections to the report were not meritorious.

    3. <u>Impairments</u>

Plaintiff argues that the ALJ erred in determining that there was no single impairment which was severe, but rather the combination of impairments was severe. Plaintiff avers that degenerative disc problems and multi-level nerve problems, which effect the ulnar nerve, individually constitute severe impairments. Because these impairments are severe in themselves, Plaintiff contends that the ALJ erred in his analysis. Moreover, Plaintiff contends that Judge Wilson failed to appreciate the difference in the findings of Dr. Sidhom and Dr. Naomi Abel, M.D. at University of South Florida (USF) Health. Dr. Abel found that Plaintiff did not have carpal tunnel syndrome, which is an impingement of the nerves at the wrist. Based upon the electrodiagnositc studies in 2009, Dr. Sidhom found that Plaintiff suffered from cubital tunnel syndrome, which is a problem in the neck and thoracic area. According to Plaintiff, Judge Wilson incorrectly used Dr. Abel's findings that Plaintiff did not suffer from carpal tunnel syndrome to refute Dr. Sidhom's findings that he suffered from cubital tunnel syndrome.

With regard to Plaintiff's spinal impairments, the degenerative disc problems, Judge Wilson concluded that the ALJ found Plaintiff's spinal impairments were severe as evidenced by the RFC, restricting Plaintiff to a restricted range of sedentary work due to his spinal impairments.  Moreover, Judge Wilson concluded that Plaintiff's argument that the ALJ failed to assess as a severe impairment "the possible right cubital tunnel syndrome" was without sufficient supports.  First, Judge Wilson noted that Dr. Sidhom assessed the Plaintiff with "possible" right cubital tunnel syndrome based on the electrical conductive studies.  Second, Judge Wilson emphasized that subsequent testing refuted Dr. Sidhom's speculative diagnosis.  Judge Wilson noted that the electromyography and nerve conduct velocity studies demonstrated "no . . . evidence of right or left capral tunnel syndrome, **or ulnar neuropathy**. No evidence of peripheral neuropathy.  No evidence of left brachial plexopahty, or left cervical radiculopathy."  (Dkt. 20 at P. 22-23)(emphasis added)  Third, Judge Wilson mentioned that Plaintiff has not cited any "definitive diagnosis of right cubital tunnel syndrome, and certainly has not cited any evidence compelling a finding that it had more than a minimal effect on his ability to work."  (Dkt. 20 at P. 23)

Contrary to Plaintiff's contentions regarding the impairments, the ALJ's finding that the combination of Plaintiff's impairments was severe is in accord with the regulations which direct the ALJ to determine whether the Plaintiff has an impairment that is "severe" or a combination of impairments that is "severe."  20 CFR 404.1520(c);416.920(c).  Additionally, Judge Wilson did not use unrelated, irrelevant findings of Dr. Abel to refute the findings of Dr. Sidhom.  Within Dr. Abel's findings is the mention of both carpal tunnel syndrome and cubital tunnel syndrome—"ulnar neuropathy."  It is clear that Judge

Wilson was referring to Dr. Abel's finding that there was no evidence of ulnar neuropathy to refute Dr. Sidhom's assessment that Plaintiff demonstrated he had "possible right cubital tunnel syndrome."

    4. <u>Weight of Evidence</u>

Next, Plaintiff contends that improper weight was given to the opinion of Dr. Sidhom, Dr. Bharminder S. Bedi ("Bedi"), and Dr. Edwin Lamm ("Lamm"). Specifically, Plaintiff asserts that the opinion of Dr. Sidhom, his long-time treating pain specialist, was not given substantial weight. Plaintiff also argues that improper weight was given to Dr. Bedi, Plaintiff's treating psychiatrist. According to Plaintiff, Dr. Bedi's opinions address his anger and frustration from pain. Plaintiff next argues that the ALJ did not consider the opinion of Dr. Lamm that Plaintiff should not stand for prolonged periods of time. According to Plaintiff, "[c]learly, if an individual should not be standing, he would not be [a]ble to stoop." (Dkt. 21 at P. 14)

As to Dr. Sidhom, Judge Wilson noted that the ALJ acknowledged that Dr. Sidhom was a treating physician and considered the ALJ's discussion regarding Dr. Sidhom:

> The undersigned considered the various opinions offered by Dr. Sidhom, but they are given only some weight. As discussed above, Dr. Sidhom indicated in November 2008 that the claimant was *not* totally disabled and his inability to *find* work was probably related to his underlying medical conditions and associated work restrictions. This opinion is not inconsistent with the claimant's determined residual functional capacity. Dr. Sidhom's statement in March 2010 that the claimant should be excused from working for the next 2 months is not given any weight since his progress notes indicate no deterioration or even change in the claimant's condition at that time. Moreover, Dr. Sidhom provided no explanation as to why a period of 2 months was chosen .... When Dr. Sidhom's opinion changed again in 2010 to the claimant being able to work only part-time at light duty, his progress notes again reflect no deterioration or significant change in the claimant's condition that would support any change in his limitations. Additionally, the imaging of the claimant's cervical and lumbar spine done at USF Health, and

8

the examination findings of Drs. Lamm and Melton, refute the conclusion the claimant is unable to do work activity on a full-time basis.

(Dkt. 6-2 at P. 19) Based on this discussion of the ALJ, Judge Wilson found that the ALJ provided good cause for discounting the opinion of Dr. Sidhom.

Regarding the weight the ALJ gave to Dr. Bedi's opinion, Judge Wilson opined that the ALJ gave Dr. Bedi's opinion significant weight.  Judge Wilson noted that the ALJ relied on Dr. Bedi's opinion in finding that Plaintiff had only mild difficulties in social functioning because Dr. Bedi did not mention any significant social functioning limitations. Further, Judge Wilson highlighted that the ALJ, in rejecting the Plaintiff's contention that he had disabling mental limitations, referenced Dr. Bedi's opinion that the Plaintiff was doing well psychiatrically with medication.

As to Dr. Lamm's opinion, Judge Wilson characterized this argument as frivolous, asserting that Dr. Lamm did not opine that Plaintiff could never stand but rather Dr. Lamm indicated that Plaintiff could not stand long enough to return to his prior job washing cars. (Dkt. 20 at P. 31)   Dr. Lamm stated the following in his report:

> This 46-year old man would be unable to resume any work activity similar to what he has done in the past. He would not be able to function in a situation where he had to lift objects. He would be limited to a completely sedentary work activity. He could resume washing cars but would be limited in any extent of standing that kind of work activity.

(Dkt. 6-8 at P. 112)   Judge Wilson also noted Plaintiff's testimony[3] that he can stand comfortably for approximately twenty minutes at a time. (Dkt. 20 at P. 31)   Consequently, Judge Wilson opined that, contrary to Plaintiff's misstatement of Dr. Lamm's opinion, Plaintiff can stand and there is no basis for the contention that Plaintiff cannot stoop.

---

[3] Plaintiff testified at the hearing: "Stand for comfortably? Until the pain start, maybe about twenty minutes, I'm not sure. I haven't ever time it, but when I start hurting from standing up, then like I just did sit down."  (Dkt. 6-2 at P. 45)

9

The law is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). A similar preference for treating doctors' opinions is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). "The ALJ must articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Eleventh Circuit has found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. See Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987); Sharfarz v. Bowen, 825 F.2d 278, 280–81 (11th Cir.1987). Similarly, the Eleventh Circuit has also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records. See Jones v. Department of Health & Human Services, 941 F.2d 1529, 1532–33 (11th Cir.1991); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

The Court finds the requisite "good cause" in this record and is convinced by the ALJ's rationale for declining to afford Dr. Sidhom's opinion substantial weight as the doctor's opinions were either conclusory or inconsistent with his own medical records. As to the opinions of Dr. Bedi and Dr. Lamm, Judge Wilson noted that the ALJ considered their opinions and relied on their opinions to render his decision.

5. <u>Eleventh Circuit Pain Standard</u>

Plaintiff argues that the ALJ did not "properly utilize [the] 11th Circuit pain standard." Plaintiff contends that his testimony was not properly refuted, and consequently, the ALJ should have accepted his testimony as true as a matter of law.

Judge Wilson noted that the ALJ found that the medical evidence does establish the presence of underlying impairments that reasonably could be expected to produce the symptoms Plaintiff's alleges; however, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. Judge Wilson opined that the ALJ set forth cogent reasons for discounting Plaintiff's credibility. Addressing Plaintiff's credibility, the ALJ wrote:

> The claimant's allegations concerning the limiting effects of his symptoms are found to be not fully credible due to inconsistencies in some of his statements and his demonstrated ability to perform certain activities. For example, the claimant's allegation of a complete inability to work is inconsistent with his statement to Dr. Bedi in August 2010 that he may be able to do some kind of work once he *finds* a job (Exhibit B21F). The claimant also reported to consultative examiner Dr. Moering that he earns spending money by cleaning for family members (Exhibit B7F). Also, the undersigned finds the claimant's allegations of him experiencing significant medication side effects to be not fully credible since Dr. Sidhom's progress notes frequently document that there was *no* evidence of medication induced side effects (e.g., Exhibits B3F, B12F). The undersigned also notes the report from a field office employee that the claimant was seen picking up his child from the floor as he was leaving in May 2008 (Exhibit B I E). Lastly, the undersigned notes the claimant's reports of frequent anxiety attacks, sometimes lasting all day at Exhibit B8E. None of the claimant's treating sources documented him as reporting anxiety attacks of this nature and frequency. It is reasonable to conclude if an individual were experiencing anxiety attacks this severe on such a frequent basis, it would be noted somewhere within that individual's records.
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record, the opinions of the DDS consultants who reviewed this case, some of the opinions of the claimant's treating sources, and some of the claimant's own statements concerning his ability to work once he secures a job.

The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms. The standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition **or** (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In Foote, the court remanded the matter and criticized the ALJ for "fail[ing] to identify any inconsistencies between [the plaintiff's] statements to her physicians and those she ha[d] made to the Secretary, through her application for disability benefits and during her administrative hearing." Foote, 67 F.3d at 1561.

Upon review of the record, this Court upholds Judge Wilson's finding that the ALJ made a reasonable decision to reject Plaintiff's subjective testimony. The ALJ articulated in detail the evidence substantiating his decision: inconsistencies in some of Plaintiff's statements and Plaintiff's demonstrated ability to perform certain activities, which warranted the discounting of Plaintiff's credibility.

### III.  CONCLUSION

In sum, Plaintiff's objections in this case are merely reassertions of the arguments raised in the initial pleading. As discussed in detail above, the Court finds these assertions to have been properly resolved by Judge Wilson, consistent with binding law and the applicable standard of review. As such, Plaintiff's objections are overruled. Upon consideration of the Report and Recommendation, and in conjunction with an independent examination of the file, including a *de novo* review of Plaintiff's objections,

the Court is of the opinion that the Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is **ORDERED** that:

1. The Report and Recommendation (Dkt. 20) is **CONFIRMED** and **ADOPTED** as part of this Order;

2. The decision of the Commissioner of Social Security is hereby **AFFIRMED**;

3. The Clerk is directed to enter judgment in favor of the Defendant; and,

4. The Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of March, 2014.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person